IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.   No. CR 21-0864 JB

DAVID CHAVEZ

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Formal Objection to Paragraph 22 of Presentence Report, filed October 7, 2024 (Doc. 121)("Objections"). Sentencing in this matter will take place on October 10, 2024. See Second Amended Notice of Sentencing, filed October 2, 2024 (Doc. 120). The primary issue is whether the United States Probation Office's Presentence Investigation Report, filed September 9, 2024 (Doc. 114)("PSR"), incorrectly applies a 2-level enhancement under § 2K2.1(b)(1)(A) for possession of three or more firearms, because the United States has not shown -- by a preponderance of the evidence -- that Defendant David Chavez possessed three or more firearms recovered at Co-Defendant Ednamay DeLaRosa's home. Having reviewed carefully the parties' arguments, relevant law, and applicable facts, the Court concludes that the PSR correctly applies a 2-level enhancement under § 2K2.1(b)(1)(A). The Court thus overrules Chavez' Objections.

## FACTUAL BACKGROUND

Chavez does not object to the PSR's facts outside of paragraph 22, and the Court thus concludes that those undisputed facts are findings of fact. See Federal R. Crim. P. 32(i)(3)(A) ("[The court] may accept any undisputed portion of the presentence report as a finding of fact."). In May, 2021, federal agents conduct surveillance on Chavez and DeLaRosa, and observe the pair

participating in several suspected drug transactions.  See PSR ¶¶ 11-3, at 4.  Chavez admits that, at this time, he had been convicted of a felony.  See Plea Agreement ¶ 7, at 3, filed July 10, 2024 (Doc. 105)("Chavez Plea Agreement").  On June 2, 2021, authorities execute a search warrant at Chavez' and DeLaRosa's residences.  PSR ¶ 14, at 4.  At Chavez' residence, authorities find a black bag with sandwich bags, scales, and money.  See PSR ¶ 14, at 4.  At DeLaRosa's residence, authorities find four firearms -- a semiautomatic rifle, a .40 caliber Glock, a shotgun, and a .25 caliber pistol -- and two boxes of suspected marijuana.  See PSR ¶ 14, at 4-5.  Specifically, authorities find three guns -- the rifle, shotgun, and .40 caliber Glock -- in DeLaRosa's closet and one gun -- the .25 caliber pistol -- in DeLaRosa's nightstand.  See United States v. Chavez, No. 21-mj-00756-LF (D.N.M.), Criminal Complaint ¶ 12, at 6, filed June 3, 2021 (Doc. 1)("Chavez Complaint").  Following the search, Chavez admits to possessing the shotgun, the .40 caliber Glock, and the pistol, while DeLaRosa admits to possessing the rifle and the pistol.  See Chavez Complaint ¶ 14-15, at 6.  In the same interview, Chavez states that he gave his three guns to DeLaRosa "a few months ago" and that the .40 caliber Glock was in a black bag.  Chavez Complaint ¶ 14, at 6.  When authorities find the Glock, it is in a black bag in DeLaRosa's closet.  See Chavez Complaint ¶ 12, at 5.

In her plea agreement, Delarosa admits that she possessed the four guns found at her apartment and acknowledges that two of them had large magazines:

> On June 2, 2021, the FBI came to my house in Albuquerque to serve a search warrant.  At that time I, Ednamay DeLaRosa, knew that I possessed four firearms in my house.  I also knew that one of the firearms, a semi-automatic AR-15, had a 30-round magazine and that a second firearm, a Glock .40 S&W caliber pistol, had a 50-round drum magazine.

Plea Agreement ¶ 25, at 4, filed February 3, 2023 (Doc. 76)("DeLaRosa Plea Agreement").  In his Objections, Chavez asserts that he never admitted to possessing three firearms, and that he told authorities that "he brought firearms, plural, to [Delarosa's] home" and that "[w]hat he meant were

the 2 firearms that she did not admit knowledge of in her factual basis of her plea agreement." Objections at 3. Chavez also states that "clarified post arrest statements from both Mr. Chavez and Ms. Delarosa confirm that two of the firearms were hers and two were his." Objections at 3. Chavez provides the Court an FBI Debrief Report indicating that, on July 27, 2022, Chavez "spoke of his current charge and stated that two guns at Ednamay's DELAROSA [sic] were his." FBI Debrief Report at 1 (dated August 2, 2022), filed October 7, 2024 (Doc. 123-1)("Debrief Report").

## PROCEDURAL BACKGROUND

On September 9, 2024, the United States Probation Office ("USPO") filed a PSR that applies a 2-level enhancement under § 2K2.1(b)(1)(A) for possession of three or more firearms. See PSR ¶ 23, at 6. On October 7, 2024, Chavez filed the Objections to the PSR, which contend that the 2-level § 2K2.1(b)(1)(A) enhancement does not apply, because he possessed only two of the four guns -- the shotgun and the pistol -- found at DeLaRosa's residence. See Objections at 2. On October 8, 2024, the USPO filed an Addendum to the Presentence Report, (Doc. 124)("Addendum"), which concludes that the § 2K2.1(b)(1)(A) enhancement applies, because "there is a preponderance of evidence to prove the defendant had both actual and constructive possession of the 12-guage shotgun, the .40 caliber semiautomatic pistol with an accompanying 50-round drum magazine, and the .25 caliber semiautomatic pistol." Addendum at 2.

## LAW REGARDING OBJECTIONS TO A PRESENTENCE REPORT

Before the Court imposes a sentence, the USPO "must conduct a presentence investigation and submit a report to the court . . . ." Fed. R. Crim. P. 32(c)(1). A PSR must apply the advisory sentencing Guideline, meaning that it must:

(A)   identify all applicable guidelines and policy statements of the Sentencing Commission;

  (B)  calculate the defendant's offense level and criminal history category;

  (C)  state the resulting sentencing range and kinds of sentences available;

  (D)  identify any factor relevant to:

    (i)  the appropriate kind of sentence, or

    (ii)  the appropriate sentence within the applicable sentencing range; and

  (E)  identify any basis for departing from the applicable sentencing range.

Fed. R. Crim. P. 32(d)(1).  A presentence report also must provide additional information, including:

  (A)  the defendant's history and characteristics, including:

    (i)  any prior criminal record;

    (ii)  the defendant's financial condition; and

    (iii)  any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional treatment;

  (B)  information that assesses any financial, social, psychological, and medical impact on any victim;

  (C)  when appropriate, the nature and extent of nonprison programs and resources available to the defendant;

  (D)  when the law provides for restitution, information sufficient for a restitution order;

  (E)  if the court orders a study under 18 U.S.C. § 3552 (b), any resulting report and recommendation;

  (F)  a statement of whether the government seeks forfeiture under Rule 32.2 and any other law; and

  (G)  any other information that the court requires, including information relevant to the factors under 18 U.S.C. § 3553(a).

Fed. R. Crim. P. 32(d)(2).

After the USPO files a PSR, the parties have an opportunity to object to the report.  See Fed. R. Crim. P. 32(f).  Parties must make their objections in writing within fourteen days of receiving the PSR.  See Fed. R. Crim. P. 32(f)(1).  Parties may object to many aspects of the PSR, "including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report." Fed. R. Crim. P. 32(f)(1).  For example, a party can object to a PSR's statement of facts.  See, e.g., United States v. Garcia, No. CR 20-1370 KWR, 2022 WL 2341670 (D.N.M. June 29, 2022)(Riggs, J.)(sustaining in part and overruling in part a defendant's objections that a PSR misstates material facts regarding the posted speed limit and the circumstances surrounding the victim's injuries).  If a party raises a factual objection, it must present "information to cast doubt on" the PSR's recitation of the facts.  See United States v. Yates, 22 F.3d 981, 989 (10th Cir. 1994).  A party also can object that the USPO miscalculates a defendant's criminal history category.  See, e.g., United States v. Chavez, No. CR 18-0836 JB, 2018 WL 6621283 (D.N.M. December 18, 2018)(Browning, J.)(addressing a defendant's objections that the Court should reduce his criminal history score by several points).  Similarly, a party can object that a PSR impermissibly applies a base-offense-level enhancement, see, e.g., United States v. Casias-Grove, No. 22-0109 JB, 2022 WL 17830249 (D.N.M. December 21, 2022)(Browning, J.)(sustaining a defendant's objection that the PSR impermissibly applies a 4-level enhancement to his base-offense-level); that the PSR should have applied an additional base-offense-level enhancement, see, e.g., United States v. Talk, No. CR 19-1994 JB, 2021 WL 1978624 (D.N.M. May 18, 2021)(Browning, J.)(sustaining the United States' objection that the PSR should have applied a 4-level enhancement to the defendant's base offense level); or that the PSR should have applied a base offense level decrease, see, e.g., United States v. Pena, Nos. CR 19-3609 JB, CR 19-3611 JB, 2022 WL 16924000 (D.N.M. November 13,

2022)(Browning, J.)(sustaining the parties' objections that the PSR should have applied a 2-level reduction to the defendant's base offense level).

Ideally, the parties and the USPO can work through objections without the Court's assistance. Rule 32(f)(3) establishes: "After receiving objections, the probation officer may meet with the parties to discuss the objections. The probation officer may then investigate further and revise the presentence report as appropriate." Fed. R. Civ. P. 32(f)(3). In keeping with rule 32(f)(3), long ago in the District of New Mexico, the Court, the United States Attorney's Office, and the Federal Public Defender's Office agreed that, if there are objections, counsel first will talk to the USPO and see if they can work to address the objections independently. If the parties and the USPO cannot work out an objection, then the parties may file an objection with the Court. If the parties and the USPO cannot resolve an objection, rule 32(g) establishes that, "[a]t least 7 days before sentencing, the probation officer must submit to the court and to the parties the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them." Fed. R. Crim. P. 32(g).

If the parties and the USPO cannot resolve an objection on their own, the Court "must . . . rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). When resolving factual objections, the Court must determine whether the United States has met its burden of proving disputed facts by a preponderance of the evidence. See United States v. Munoz-Tello, 531 F.3d 1174 (10th Cir. 2008). Similarly, in considering objections to enhancements to a defendant's criminal history category or base offense level, the Court must determine whether the United States has met its burden of showing that a particular

enhancement applies by a preponderance of the evidence.[1]  See United States v. Cervantes-Chavez, 59 F. Supp. 3d 1295, 1315 (D.N.M. 2014)(Browning, J.).  The Court may base its conclusion "on evidence presented at trial, undisputed statements in the PSR, and evidence presented at the sentenc[ing] hearing."  United States v. Garcia, 2022 WL 2341670, at *2 (quoting United States v. White, 663 F.3d 1207, 1216 (11th Cir. 2011)).

### LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court reaffirms the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute."  530 U.S. at 481 (emphasis in original).  The Supreme Court cautions, however, that the Constitution of the United States of America limits this discretion and that the Sixth Amendment to the Constitution requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi v. New Jersey, 530 U.S. at 490.  In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborates on its holding in Apprendi v. New Jersey, stating that the "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  Blakely v. Washington, 542 U.S. at 303 (emphasis in original)(first citing Ring v. Arizona, 536 U.S. 584, 602 (2002); and then citing Harris v. United States, 536 U.S. 545, 563 (2002)(plurality opinion), overruled by Alleyne v. United States, 570 U.S. 99 (2012)).  In United States v. Booker, however, the Supreme Court holds that, because the sentencing

---

[1]There is some nuance regarding the applicable burden of proof required for sentencing enhancements, which the Court discusses in greater detail in the next section.

guideline ranges are no longer mandatory, "Apprendi does not apply to the present advisory-Guidelines regime."  United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013)(citing United States v. Booker, 543 U.S. at 259).  See United States v. Booker, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes 'the relevant sentencing rules . . . mandatory and impose[s] binding requirements on all sentencing judges' -- the statute falls outside the scope of Apprendi's requirement." (quoting United States v. Booker, 543 U.S. at 221)(second alteration added by United States v. Booker)).  More recently, the Supreme Court holds that the requirements in Apprendi v. New Jersey apply to facts that increase a defendant's mandatory minimum sentence.  See Alleyne v. United States, 570 U.S. at 103.

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit holds that Blakely v. Washington and United States v. Booker do not change the district court's enhancement findings analysis.  See United States v. Magallanez, 408 F.3d at 684-85.  United States v. Magallanez involves plain-error review of a drug sentence in which a jury finds the defendant guilty of conspiracy to possess with intent to distribute and conspiracy to distribute methamphetamine.  See United States v. Magallanez, 408 F.3d at 676.  As part of its verdict, the jury, through a special interrogatory, attributes to the defendant 50 to 500 grams of methamphetamine; at sentencing, however, the judge -- based on government witnesses' testimony of the various amounts that they had sold to the defendant -- attributes 1,200 grams of methamphetamine to the defendant and uses that amount to calculate his sentence under the Guidelines.  See United States v. Magallanez, 408 F.3d at 682.  The district court's findings increase the defendant's Guidelines sentencing range from 63 to 78 months, based on the jury's 50 grams amount, to 121 to 151 months, based on the judge's 1,200 grams amount.  See United States v. Magallanez, 408 F.3d at 682-83.  On appeal, the Tenth Circuit states that, both before and

after Congress' passage of the "Sentencing Reform Act, sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict." United States v. Magallanez, 408 F.3d at 684. Although United States v. Booker makes the Guidelines ranges "effectively advisory," United States v. Booker, 543 U.S. at 245, the Tenth Circuit reaffirms that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before." United States v. Magallanez, 408 F.3d at 685.

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance." United States v. Olsen, 519 F.3d 1096, 1105(10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[2] "[T]he application of an enhancement . . . does not implicate

---

[2] Although the Tenth Circuit stated in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since characterized its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105). See United States v. Olsen, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)). The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence. United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation). See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (concluding that a district court need not find by any

the Supreme Court's holding in Apprendi v. New Jersey." United States v. Reyes-Vencomo, No. CR 11-2563 JB, 2012 WL 2574810, at *7 (D.N.M. June 26, 2012)(Browning, J.). The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005). Accord United States v. Ray, 704 F.3d at 1314. A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increases his or her sentence beyond the statutory maximum. See United States v. O'Flanagan, 339 F.3d 1229, 1232 n.2 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, 592 F. App'x 699, 705 (10th Cir. 2014)(unpublished)(holding that, after Alleyne v. United States, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").³ The Court has noted:

---

more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms). Subsequent to United States v. Washington, the Tenth Circuit reiterates the position that preponderance of the evidence is the proper standard, stating: "The Supreme Court has not adopted a heightened standard of proof at sentencing for contested facts, thus we hold that the correct standard of proof in this case was a preponderance of the evidence. This issue has been foreclosed in this Circuit." United States v. Robertson, 946 F.3d 1168, 1171 (10th Cir. 2020)(citing United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)).

³United States v. Hendrickson, 592 F. App'x 699 (10th Cir. 2014) is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

> [A]lthough the decision of the Supreme Court of the United States in Alleyne v. United States . . . expands the rule from Apprendi v. New Jersey, . . . (holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence. See [United States v. Sangiovanni, No. CR 10-3239 JB,] 2014 WL 4347131, at *22-26 [(D.N.M. August 29, 2014)(Browning, J.)].

United States v. Cervantes-Chavez, 59 F. Supp. 3d at 1315. The Supreme Court has clarified that "[b]oth the 'floor' and 'ceiling' of a sentencing range 'define the legally prescribed penalty.' . . . And under our Constitution, when 'a finding of fact alters the legally prescribed punishment so as to aggravate it,' that finding must be made by a jury of the defendant's peers beyond a reasonable doubt." United States v. Haymond, 588 U.S. 634, 645 (2019)(quoting Alleyne v. United States, 570 U.S. at 112-14). Further, the Tenth Circuit has determined that a district court could use its own finding on drug quantity to enhance a defendant's Guidelines range consistent with Alleyne v. United States, "so long as the court does not use its own drug quantity finding to alter the defendant's statutory sentencing range." United States v. Cassius, 777 F.3d 1093, 1094 (10th Cir. 2015)(emphasis in original).

## LAW REGARDING CONSTRUCTIVE POSSESSION OF FIREARMS

"To establish possession, the government must show the defendant actually or constructively possessed the guns." United States v. Gambino-Zavala, 539 F.3d 1221, 1229 (10th Cir. 2008). "Actual possession exists when a person has direct physical control over a thing." United States v. Johnson, 46 F.4th 1183, 1187 (10th Cir. 2022)(quoting United States v. Benford,

---

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(unpublished). The Court concludes that United States v. Hendrickson and United States v. Beirle, 716 F. App'x 782 (10th Cir. 2017), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

875 F.3d 1007, 1020 (10th Cir. 2017)).  "Constructive possession exists when a person not in actual possession knowingly has the power and intent at a given time to exercise dominion or control over an object."  United States v. Little, 829 F.3d 1177, 1182 (10th Cir. 2016)("Little").[4] See United States v. Trujillo, No. 21-1323, 2022 WL 17661046, at *2 (10th Cir. Dec. 14, 2022)("To prove constructive possession for purposes of this sentencing enhancement, the government needed to show by a preponderance of the evidence that Trujillo had 'both the power to control [the gun] and intent to exercise that control.'")(quoting United States v. Samora, 954 F.3d 1286, 1290 (10th Cir. 2020)); United States v. Beierle, 716 F. App'x 782, 790 (10th Cir. 2017)(applying Little's constructive-possession analysis to U.S.S.G. § 2K2.1(b)(1)(A)).  "When an object can be attributed to more than one person, there must be a nexus between the defendant and the object supported by 'reasonable inferences from direct or circumstantial evidence.'" United States v. Brown, 85 F.4th 1291, 1296 (10th Cir. 2023)(quoting United States v. Reece, 86 F.3d 994, 996 (10th Cir. 1996)).

## ANALYSIS

The Court overrules Chavez' Objections, because the United States has shown -- by a preponderance of the evidence -- that he possessed at least three firearms found at DeLaRosa's residence.  The parties disagree only whether Chavez possessed the .40 caliber Glock found in a

---

[4]In Little, the Tenth Circuit explains that the Supreme Court's opinion in Henderson v. United States, 575 U.S. 622 (2015), "changes the law of constructive possession in our circuit." Little, 829 F.3d at 1182.  In Henderson v. United States, the Supreme Court "squarely held that constructive possession requires both power to control an object and intent to exercise that control."  Little, 829 F.3d at 1182 (citing Henderson v. United States, 575 U.S. at 626).  In Little, therefore, the Tenth Circuit overruled its earlier holding in United States v. Colonna, 360 F.3d 1169 (10th Cir. 2004), which holds that, for purposes of constructive possession, "[i]t is not necessary to show that the defendant intended to exercise . . . dominion or control."  United States v. Colonna, 360 F.3d at 1179.  See Little, 829 F.3d at 1182.

black bag inside DeLaRosa's closet.  FBI Special Agent Jordan Spaeth swears under oath that, in his post-arrest interview, Chavez describes the black bag that carried the Glock and admits to owning three firearms -- the shotgun, Glock, and pistol -- found at DeLaRosa's residence.  See Chavez Complaint ¶ 14, at 6.  Although Chavez identifies a potentially conflicting statement he made at a later debriefing session, see Debrief Report at 1, Chavez does not submit a sworn statement contradicting Spaeth's recollection.  Without more competent evidence that challenges Spaeth's sworn statement, the Court concludes that the United States shows -- by a preponderance of the evidence -- that Chavez possessed the Glock.  In other words, Chavez' later assertions that he never possessed the Glock that he identified specifically in his post-arrest interview does not persuade the Court that the United States fails to meet its evidentiary burden at the sentencing stage.[5]

**IT IS ORDERED** that: (i) the Defendant's Formal Objection to Paragraph 22 of Presentence Report, filed October 7, 2024 (Doc. 121), is overruled; (ii) the 2-level § 2K2.1(b)(1)(A) enhancement applies; (iii) the applicable offense level is 25; (iv) the applicable criminal history category is III and (iii) the United States Sentencing Guidelines establish an imprisonment range of 70 to 87 months.

_____
UNITED STATES DISTRICT JUDGE

---

[5]There is also circumstantial evidence, outside of Speath's sworn statement, that Chavez possessed the Glock.  Chavez admits he gave DeLaRosa multiple guns to store, and he admits to owning the shotgun and the pistol.  See Objections at 2-3.  Authorities find the shotgun in the closet and the pistol in the nightstand.  See Chavez Criminal Complaint ¶ 14-15, at 6.  "Reasonable inferences from direct or circumstantial evidence," United States v. Reece, 86 F.3d at 996, support the conclusion that Chavez possessed the Glock, "an object [that] can be attributed to more than one person," United States v. Brown, 85 F.4th at 1296, which is found in the same closet as the shotgun, because it makes sense that he would store his guns in the same location.

- 14 -

*Counsel:*

Alex M. M. Uballez
  United States Attorney
Paul J. Mysliwiec
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Monnica L. Barreras
Law Office of Monnica L. Barreras, LLC
Albuquerque, New Mexico

    *Attorney for Defendant Chavez*